**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

    **v.**                              **CRIMINAL ACTION NO. 2:07cr19**

**WHITFIELD M. PINDER, JR.,**

        **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Whitfield M. Pinder's ("Defendant") motion to suppress evidence seized from his residence located at 122 Webster Avenue, Portsmouth, Virginia on March 3, 2006. The Defendant also moves to suppress statements made by him because he was allegedly not appraised of his Miranda rights. Having thoroughly reviewed the parties' memoranda, and after having a hearing to consider the motion on April 19, and April 20, 2007, the Defendant's motion to suppress is **GRANTED IN PART**, and **DENIED IN PART**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

There are significant disputes regarding substantive facts relevant to the motion. Moreover, the Court was faced with genuine issues of credibility in assessing often contradicting testimony regarding the facts surrounding the seizure of the evidence at issue in this case.

Officer J.C. Knorowski ("Officer Knorowski"), of the Portsmouth Police Department, testified that on March 3, 2006, he was contacted by a confidential informant who provided him with information that the Defendant was involved in the illegal manufacture and distribution of

1

movie DVDs.[1]  (Mot. Supp. Hr'g Tr.  8-10, April 19, 2007.)   After receiving the information,

Officer Knorowski met with the informant.  According to Officer Knorowski, the informant

stated that the Defendant lived at 122 Webster Avenue in the City of Portsmouth, and that the

illegal manufacturing of DVDs was taking place in the attic of the residence.  The informant also

stated that he did not expect any drugs or guns to be in the house but that a pit bull was on the

premises.  After meeting with the informant, Officer Knorowski stated that he contacted an

Officer Johnakin of the Portsmouth narcotics unit and was told that the informant was active and

had provided reliable information regarding narcotics investigations in the past.  (Hr'g Tr. 11.)

Officer Knorowski then testified that he contacted the Portsmouth Criminal Investigations

Bureau, where he asked a Sergeant Walker if there was sufficient time and manpower available

for the execution of a search warrant at 122 Webster Avenue, based on the informant's tip.

(Hr'g Tr. 13.)  According to Officer Knorowski, Sergeant Walker stated that the Criminal

Investigations Bureau would not be able to assist because of manpower issues.  Sergeant Walker

asked Officer Knorowski if the search could wait until the following week.  (Hr'g Tr. 12-14.)

Officer Knorowski responded that it could wait.  (Hr'g Tr. 13.)

　　　It is not clear to the Court the reason Officer Knorowski, despite agreeing with Sergeant

Walker that the search could wait, decided to go to the Defendant's premises.  (Hr'g Tr. 14,

---

[1]Upon a close examination of Officer Knorowski's demeanor on the witness stand and the evidence presented at the hearing, the Court questions the degree of credibility and candor associated with Officer Knorowski's testimony.  His testimony was internally inconsistent and disjointed.  He was unable to testify without referring to his prepared notes.  Significantly, much of his testimony was contradicted in substantive ways by more than one veteran police officer who was at the scene.  Finally, Officer Knorowski neglected to include in his testimony important and pertinent information revealed for the first time by other officers who were on the scene.  In short, his testimony was generally unpersuasive and is thus given less than dispositive weight in the Court's analysis.

193.)  Nevertheless, at the hearing, Officer Knorowski testified that following his conversation

with Sergeant Walker, he briefed fellow Officer Whitson about the tip he had received.  He and

Officer Whitson proceeded to the Defendant's residence to conduct a "knock and talk".[2]  (Hr'g

Tr. 14.)  The Officers arrived at the Defendant's residence at approximately 4:50 p.m.  Officer

Knorowski proceeded to the rear of the house, where he encountered a pit bull, while Officer

Whitson knocked on the front door.  Animal Control Officers were called to the scene.  The

Defendant answered the door.  The officers identified themselves and asked to speak with him.

The Defendant agreed to talk.  The officers then asked the Defendant his name, and asked if he

lived inside the house.  The Defendant responded that he owned the whole house.  The officers

stepped into the foyer of the house. The officers then advised the Defendant that they had

received information that there were illegal "bootlegged" movie DVDs inside the attic of the

residence and asked the Defendant for consent to search the attic.  Officer Knorowski testified

that the Defendant stated that "all the DVD's were upstairs.  I can let you search, but would

rather you have a warrant." (Hr'g Tr. 17.)  The Defendant requested that the officers obtain a

warrant.

    Officer Knorowski alleges that at this point he could hear noises coming from upstairs.

(Hr'g Tr. 17-18.)  The Defendant was then asked if there were any people or dogs upstairs.  The

Defendant responded that this was a multiple apartment residence with a number of tenants and

that there was a dog.  The officers then told the Defendant that they were going to freeze the

---

[2] The Court notes that Officer Whitson was the only other officer who had first hand
knowledge of the events surrounding the search and thus, would have been able to corroborate
Knorowski's account of the facts, and what facts Officer Knorowski had prior to execution of the
sweep.  However, the government did not have him testify.

3

house and that Defendant was not under arrest, but that he would be placed in handcuffs.  (Hr'g

Tr. 18.)  The Defendant was then placed in handcuffs.  Back-up officers were called to the scene.

At this point, the Defendant told the officers that he did not understand why they were

conducting this sweep, that he had helped the City of Portsmouth Police Department with cases

in the past, and that he had also assisted in a recent homicide investigation in Norfolk.

Shortly thereafter, two back-up officers arrived.  Once they arrived, the officers,

including an Animal Control Officer, proceeded upstairs directly to the attic.  The officers did

not search any of the first or second floor apartments.  (Hr'g Tr. 62-65.)  While in the attic, the

officers encountered a pit bull which ran into a hole in the wall.  The Defendant was brought to

the attic to assist in coaxing the dog out of the wall.  No other individuals were discovered in the

house.  Officer Whitson allegedly observed a machine gun, in plain view.

In the mist of the sweep, a number of officers from the chain of command had arrived

including at least two Lieutenants, two Captains and the Assistant Chief of the police

department.  Some of these officers had significant concerns regarding the lawfulness of the

sweep and whether the officers had sufficient probable cause to conduct the sweep.  (Hr'g Tr.

109-116, 161, 168, 190.)  Before the night was over, almost the entire chain of command was on

the scene at some point.  After some discussion, it was decided that a search warrant should be

obtained and executed as soon as possible.  Officer Knorowski was sent to get a search warrant.

At approximately 9:43 p.m. on March 3, 2006, Magistrate Judge Wanda Shields issued

the search warrant.  The warrant was executed at approximately 10:05 p.m.  During the search,

which was limited to a search of the attic, police recovered among other things: (1) a loaded

Intratec 9mm semiautomatic handgun; (2) a loaded Winchester sawed-off shotgun; (3)

4

approximately 202 grams of marijuana; (4) body armor; (5) computer equipment/printer; (6)

personal paper; and (8) approximately 3,000 suspected illegal bootlegged movie DVDs and

music CDs.  At 12:40 a.m. state warrants were served on the Defendant and he was formally

arrested following the execution of the search warrant.

At the hearing, the Court also heard testimony from one of the Captains called to the

scene who revealed that because there was disagreement within the chain of command as to

whether exigent circumstances existed to establish probable cause to conduct the sweep, it was

determined that the warrant affidavit would only contain the information Officer Knorowski had

allegedly obtained prior to the sweep.  (Hr'g Tr. 116, 190.)


## II.  LEGAL STANDARD

Warrantless searches of a dwelling place are presumptively unreasonable.  *Payton v. New

York*, 445 U.S. 573, 586 (1980).  The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. CONST. AMEND IV.  Generally, the Fourth Amendment requires that an arrest or search be

based upon probable cause and executed pursuant to a valid warrant.  *See Katz v. U.S.*, 389 U.S.

347 (1967).

## III.  DISCUSSION

### A.      *Protective Sweep*

A warrantless entry of a home is presumptively unreasonable.  *Payton*, 445 U.S. at 586.

Protective or security sweeps are constitutionally impermissible and only justified by an adequate

showing of probable cause and exigency, consent, or some other acceptable reason for

circumventing the dictates of the Fourth Amendment.  *United States v. Turner*, 650 F.2d 526, 528

(4th Cir. 1981).  In *United States v. Cephas*, 254 F.3d 488, 494-95 (4th Cir. 2001), The United

States Court of Appeals for the Fourth Circuit ( "Fourth Circuit") specifically held that where

police officers (1) have probable cause to believe that evidence of illegal activity is present and

(2) reasonably believe that evidence may be destroyed or removed before they could obtain a

warrant, exigent circumstances justify a warrantless entry.  The Fourth Circuit has also identified

five factors bearing on whether exigency exists:  (1) the degree of urgency involved and the

amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the

contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding

the site; (4) information indicating the possessors of the contraband are aware that the police are

on their trail; and (5) the ready destructibility of the contraband.  *Turner*, 650 F.2d at 528 (citing

*States v. Rubin*, 474 F.2d 262 (3d Cir. 1973)).  The gravity of the underlying offense also bears on

the determination of the exigency.  *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

In this case, there is no dispute that there was no consent to search.  Thus, the government

has the burden of establishing that there was probable cause to believe that evidence of illegal

activity was present in the Defendant's home and that there was some exigency which justified its

entry and search.  *See Chimel v. California*, 395 U.S. 752, 762 (1969) ("[T]he general

requirement that a search warrant be obtained is not lightly to be dispensed with, and the burden

is on those seeking [an] exemption [from the requirement] to show that need for it . . . .").


1.     *Officers Lacked Probable Cause*

First, the Court must determine whether the officers had probable cause to believe that

evidence of a crime could be found inside the Defendant's residence.  As previously mentioned,

Officer Knorowski testified that he received a tip from a confidential informant that the

Defendant was manufacturing illegal DVDs in the attic of his residence located at 122 Webster

Avenue, City of Portsmouth.  Officer Knorowski also testified that the informant stated that there

would likely be no guns or narcotics at the residence and that there was a pit bull on the premises.

Upon obtaining this information, Officer Knorowski testified that he contacted a detective at the

narcotics unit of the police department who confirmed that the informant was active and had been

reliable in providing information in narcotics arrests and prosecutions.  Next, Officer Knorowski

testified that he then contacted the Portsmouth Criminal Investigations Bureau, where he asked

Sergeant Walker if he could assist in executing a search warrant at 122 Webster Avenue.

Sergeant Walker responded that he could not assist in the search because he did not have the

officers available to assist and asked Officer Knorowski if the search could wait.  Officer

Knorowski indicated that the search could wait and Sergeant Walker then responded that the

search be delayed until the following week.  Officer Knorowski, however, decided to proceed to

Defendant's residence.[3]

---

[3] The Court notes that it is not insignificant that Sergeant Walker, a police officer with
more experience than Officer Knorowski, did not suggest at that point that there was an
immediate need to search Defendant's residence.

Upon their arrival, the Officers observed a pit bull at the rear of the 122 Webster Avenue residence.  Upon knocking, the Defendant answered the door, identified himself as Whitfield Pinder and indicated that he owned the residence.  The Officers stated that they were there to investigate the manufacturing of illegal DVDs and asked if they could be allowed to search the residence.  The Defendant declined and asked that the officers get a search warrant.  Officer Knorowski testified that Defendant next stated that the DVD's were upstairs but that he wanted the officers to get a warrant.  At this point, it is unclear to the Court what exactly happened next.  However, it is clear that the officers did not leave to obtain a warrant.  Instead, Officer Knorowski alleges that he heard noises coming from the upstairs area of the house.  The Defendant was then asked if there were any individuals or dogs upstairs.  The Defendant responded that the house was made up of multiple apartments with a number of tenants and that there was a dog.  The Defendant was placed in handcuffs and advised that the officers were going to conduct a protective sweep.  In the meantime, the officers called in the Animal Control Officers waiting outside.  The officers then proceeded to go directly to the attic of the house where they discovered a machine gun in plain view.  These facts, standing alone are insufficient to establish probable cause to reasonably believe that a crime had occurred.

Caselaw teaches that the degree to which an informant's tip has been corroborated weighs heavily on establishing probable cause, because an informant's tip standing alone is rarely adequate to support a finding of probable cause.  *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In the instant case, there was no corroboration of the informant's tip prior to arriving at the Defendant's residence.  For example, officers did not testify that besides the tip, they had surveillance that illegal DVDs had been sold out of that address, that they had made any

controlled buys of illegal DVDs at the address, or that they had received any such reports of illegal sales.  There is a plausible argument that once on the scene the officers were able to corroborate the tip, however, only very generic facts were corroborated.  Moreover, although Officer Knorowski testified that Defendant stated that the DVD's were upstairs, the Court finds this testimony incredible.  As mentioned, Officer Knorowski's testimony generally, was unpersuasive and lacked truthfulness.  Secondly, although whether Defendant stated that "the DVDs were upstairs" was a significant fact in dispute in this case, the government offered no evidence or testimony to corroborate Officer Knorowski's allegation.  Finally, the Defendant testified under oath, that he never said that the "DVDs were upstairs."  The Court finds that Defendant never stated that the DVDs were upstairs.

Prior to the sweep, all the officers knew was that the Defendant lived at the 122 Webster Ave address, that there was a dog on the premises, and that the residence had an attic.  These nonspecific facts could easily be ascertained by any passerby viewing the residence.  The Court is unpersuaded by the contention that there was any meaningful corroboration of the informant's tip upon arrival on the scene.

Moreover, the Court finds no credible evidence indicating that upon arrival on the scene, circumstances arose which provided support for probable cause that a crime had been committed.  *See id.*  For example, in *Cephas*, the Fourth Circuit held that the odor of marijuana emanating from the defendant's apartment gave the officer probable cause to believe that contra-band-marijuana was present in the apartment.  *See Cephas*, 254 F.3d at 495 (citing *United States v. Grissett*, 925 F.2d 776 (4th Cir. 1991) (instructing that the odor of marijuana coming from the motel room provided exigent circumstances to justify a warrantless entry)).  Yet, in the instant

case, there were no analogous observations by the officers.  While Officer Knorowski points to the fact that the Defendant allegedly appeared nervous and that they allegedly heard noises coming from the upstairs of the house, the Court finds it unreasonable that the officers proceeded *directly* to the attic without stopping or knocking on the doors of any of the apartments on the lower floors of the house to search for those individuals allegedly heard a few seconds prior. Importantly, the Court finds it puzzling that the officers did not come upon a single individual during the sweep.[4]   In light of these facts, the Court finds that the officers lacked probable cause to search.

*2. The Officers had no Reasonable Belief the Evidence May Be Destroyed and no Other Exigency Existed*

Having determined that the officers lacked probable cause, the Court now turns to the government's contention that the officers' sweep of the Defendant's residence was permissible based on exigent circumstances "known to officers on the scene." (Def.'s Resp. to Pl.'s Mot. Supp. 9.)  Specifically, the government asserts that Officers Knorowski and Whitson believed that there were an unknown number of individuals in the residence and that there was a pit bull on the premises.  At the suppression hearing, Officer Knorowski testified that upon his arrival at Defendant's residence, the Defendant became agitated and grabbed his arm.  Officer Knorowski also testified that from the foyer he heard noises coming from the upper levels of the residence. Officers Knorowski and Whitson then handcuffed the Defendant and proceeded directly to the attic where they discovered the gun.

---

[4]The Court is also mindful that experienced police officers who were also on the scene testified that there were no exigent circumstances to conduct the sweep.

"The exigent circumstances analysis focuses upon the reasonableness of the officers' investigative tactics leading up to the warrantless entry." *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997).  As previously mentioned, the exigency consistently recognized is when officers reasonably believe that evidence may be destroyed or removed before they can obtain a search warrant.  *See Turner*, 650 F.2d at 528.  The Fourth Circuit has also recognized exigency when the delay in obtaining a warrant poses a threat to the safety of the officers or the general public.  *United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (explaining that the presence of guns within a residence, because of the inherent danger involved, justifies "searches and seizures on the basis of exigent circumstances").  This warrantless entry and seizure is only justified if the exigency was "determined as of the moment of the warrantless entry of the officers on the premises." *Id.*  Again, the officer's belief must be reasonable.  *Id.*

In this case, there is no evidence of possible danger to police.  Nor is there any evidence that it was reasonable to believe that destruction of evidence was imminent.  As mentioned, there are important and substantive factual disputes in this case.  Officer Knorowski testified that he handcuffed the Defendant and conducted a protective sweep of the residence because the Defendant became agitated upon questioning and that the Defendant grabbed his arm.  However, there was no corroboration of this allegation.  When questioned specifically about whether Officer Knorowski reported any sort of assault by the Defendant, no other officers could recall any mention of the alleged assault.  The Court also finds it noteworthy that Officer Knorowski did not file formal assault charges against the Defendant despite Knorowski's contention that this alleged assault was in part the reason that the Defendant was put in handcuffs and why it was necessary to secure the premises.  Moreover, the Defendant testified that he never grabbed Officer

Knorowski or touched Officer Knorowski in any manner.

The government's argument that there was a reasonable belief that security was an issue is also directly undermined by the officers' conduct.  First, if there was any concern regarding the officers' safety that was certainly not demonstrated by the officers' failure to search or even knock on the doors of any of the apartments located on the first or second floors of the residence. (Hr'g Tr. 62-65.)  The officers also did not explain their failure to check or secure any of the additional exits to the house.  Additionally, the nature of the alleged underlying crime in this case, the manufacturing of illegal DVDs,  is not one whereby any delay would pose a danger to the officers or the public at large.  Although obviously illegal, the crime alleged in the instance case is dissimilar to crimes involving guns or other weapons, such as a report of a shooting or a burglary.  These crimes present the sort of "touch and go" situations with high degrees of danger to police officers and the public warranting swift action.  *See Unites States v. Wiggins*, 192 F. Supp. 2d 493, 501 (E.D. Va. 2002) (holding that "because the officers were responding to a report that a victim had been shot in the hand, a delay could also have jeopardized the well-being or life of the victim.  This exigency justifies the warrantless entry into defendant's apartment . . . .").  On the contrary, the informant in this case specifically stated that no guns or narcotics would be found at the residence, therefore, the officers could not have reasonably believed that there was any such threat to safety at the time they entered and searched the Defendant's residence.

Finally, there is no evidence of the ready destructibility of the DVDs or the manufacturing equipment.  DVDs and corresponding equipment are not objects easily disposable such as drug paraphernalia, razors or narcotics, or even guns.  Moreover, the facts demonstrate that the officers had sufficient time to get a warrant.  *See United States v. Campbell*, 945 F.2d 713, 715 (stating that

12

exigent circumstances means that there is insufficient time to obtain a warrant).  There simply are no objective facts that lead to a reasonable belief that evidence was being destroyed or that officers were in any sort of danger.  The totality of the circumstances do not demonstrate the sort of urgent situation that warrants immediate entry and search justified by the exigency doctrine.  Therefore, any evidence observed or facts learned by the officers during the illegal sweep of the residence cannot be the basis for obtaining the search warrant and are hereby suppressed.


**B.**      *Independent Source Doctrine*

The Court's conclusion that the officers' initial warrantless sweep was not justified by probable cause or exigent circumstances does not end our inquiry.  Evidence may be admitted at trial if an independent source for the discovery of the evidence existed.  *See Murray v. United States*, 487 U.S. 533, 537 (1988).  In short, evidence that is initially discovered through unlawful means but is later acquired through lawful means independently of the initial unlawful entry is admissible.  *Id.*  In *Murray*, the court held that evidence seized pursuant to a subsequently issued warrant, although initially discovered during a search following an illegal entry, would be admissible provided that the later seizure, pursuant to a warrant, was genuinely independent of the earlier illegal activity.  *Id*. at 542.  The *Murray* court commented that the later search and seizure would not be independent if  "[T]he agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant."  *Id.*   In the instant case, the inquiry is whether the evidence recovered pursuant to the execution of the search warrant was obtained solely from use of information discovered during the illegal sweep.  *Wong Sun v. United States*,

371 U.S. 471, 487-88 (1963) (instructing that the apt question is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been arrived at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint). More specifically, the Court must determine if any information obtained during the illegal sweep was presented to the magistrate and/or in any way affected the magistrate's decision to issue the warrant. *See United States v. Gillenwaters*, 890 F.2d 679, 681-82 (4th Cir. 1989).

The government maintains that the warrant issued subsequent to the sweep was based solely upon information known to officers prior to the sweep. The warrant affidavit stated that the government had information from a reliable confidential informant that illegal DVDs were being manufactured and sold out of the Defendant's attic. No evidence found at Defendant's home or any other facts discovered at the home was included in the affidavit. There is also no evidence on the record that any additional information was communicated to the magistrate. Because it seems that only information that was allegedly provided by the informant was included in the warrant affidavit which was presented to the magistrate, it is "untainted" under *Murray*.[5]  Notwithstanding this conclusion that the magistrate was presented with an "untainted" affidavit, the Court must consider the sufficiency of the affidavit to sustain probable cause. *See Gates*, 462 U.S. at 238.

**C.     *Warrant Lacked Probable Cause***

The Defendant argues that the warrant affidavit lacks probable cause to support the issuance of the warrant. The Defendant asserts specifically that the warrant affidavit did not

---

[5]Given Officer Knorowski's lack of credibility, had Officer Knorowski included any other details in the affidavit, the Court would find that the details were learned from the illegal protective sweep.

establish the requisite veracity and basis of knowledge for probable cause.  The government argues

that the informant's basis of knowledge is evidenced by the specificity of the information

provided, and is sufficient under the *Gates* analysis.

Review of the probable cause determination by the judicial officer must be shown "great

deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).  Accordingly, "[t]he

task of a reviewing court is not to conduct a de novo determination of probable cause, but only to

determine whether there is substantial evidence in the record supporting the magistrate's decision

to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).  "Sufficient probability,

not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Maryland v.

Garrison*, 480 U.S. 79, 107 (1987).  Moreover, hearsay information provided by a confidential

informant can be sufficient to support a search warrant if the information provided in the affidavit

satisfies the *Gates* test.  *See Gates*, 462 U.S. at 238.  In *Gates* the Supreme Court held that

> "[t]he task of the issuing magistrate is simply to make a practical,
> common-sense decision whether, given all the circumstances set forth
> in the affidavit before him, including the 'veracity' and 'basis of
> knowledge' of persons supplying hearsay information, there is a fair
> probability that contraband or evidence of a crime will be found in a
> particular place.  And the duty of a reviewing court is simply to ensure
> that the magistrate had 'substantial basis for' . . . concluding that
> probable cause existed."

*Id*. (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  However, the Court in *Gates* also

recognized that warrants based on conclusory allegations should not be upheld as "[s]ufficient

information must be presented to the magistrate to allow that official to determine probable cause;

his actions cannot be the mere ratification of the bare conclusions of others." *Id.* at 239.

The Fourth Circuit has consistently explained that in evaluating whether an informant's tip

establishes probable cause, the degree to which the tip is corroborated is an important

consideration.  *United States v. Wilhelm*, 80 F.3d 116, 118 (1996) (citing *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993), *cert denied*, 510 U.S. 983 (1993) (finding that the informant's tip was reliable when police corroborated the suspect's address, vehicle, and alias, and determined that he had been arrested for drug possession just a few days before the warrant was issued, confirming his involvement in drug activity)).

In *Wilhelm*, an officer obtained a warrant after receiving a tip from an anonymous caller who alleged having seen marijuana being sold in the defendant's residence within the previous 48 hours.  The officer did not know the caller's identity and did not meet with the anonymous caller prior to or after receiving the call.  The officer stated in the warrant affidavit that the caller was a "concerned citizen" and a "mature person with personal connections with the suspects" who "projected a truthful [sic] demeanor."  The officer's only corroborating information was confirmation of directions to the defendant's home and that the caller's description of the marijuana transactions was consistent with the officer's personal knowledge of marijuana transactions generally.  *Id.* at 117-18.  Relying on the Supreme Court's holding in *Alabama v. White*, 496 U.S. 325, 329 (1990), the *Wilhelm* court explained that the "affidavit fell far short of providing probable cause for a search warrant.  Upholding this warrant would ratify police use of an unknown, unproven informant-with little or no corroboration-to justify searching someone's home."  *Wilhelm,* 80 F.3d at 120; *see White*, 496 U.S. at 332 (stating that a "range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted" was sufficient probable cause for warrant).

Similarly, the warrant affidavit in the instant case includes nothing more than conclusory statements uncorroborated by officers.  Specifically, the affidavit states that the Defendant is

"illegally recording and producing illegal movie DVD's from inside the attic . . . the confidential

reliable informant provided information that Mr. Pinder is selling illegal copies of movies he is

producing from inside the attic of 122 Webster Ave" and that "there is [sic] recording devices

located inside the attic which produce illegal movie DVDs . . . ." (Warrant Affidavit). Officer

Knorowski testified that the informant relayed this information over the phone and during a short

face to face meeting. There is no evidence on the record, however, that besides calling an officer

at the narcotics unit to confirm that the informant was active and had provided information in the

past regarding *narcotics* investigations, that Officer Knorowski corroborated any of the

information provided by the tip specifically. The affidavit also states that the "confidential reliable

informant" had previously provided reliable information that lead to arrests, recovery and

successful convictions of *narcotics* cases. However, the Court finds that simply stating, in a

conclusory fashion, that the information was provided by a "confidential reliable informant" does

not automatically establish the informant's truthfulness or reliability. Moreover, while the

government asserts that the informant had provided truthful information in the past regarding

*narcotics* investigations, again, nothing in the affidavit established that the informant was reliable

with respect to the particular crime alleged in the instant case. For example, the affidavit did not

include an explanation of the basis of Officer Knorowski's conclusion that the tip was reliable and

credible as it pertained to the Defendant and the manufacture and sale of illegal DVDs in this

particular case.

Furthermore, the affidavit did not contain any of the underlying facts and circumstances

from which the informant concluded that there were illegal DVDs and DVD reproduction

equipment present in Defendant's residence. Officer Knorowski admitted at the hearing that he

17

failed to inquire on the informant's "basis of knowledge."  For example, the affidavit says nothing about whether the informant personally observed the illegal DVDs and equipment, when the illegal activity was allegedly seen to allow the Magistrate to assess the staleness of the information, or whether the information was received from another person.  This, in combination with lack of corroboration, amounts to a "bare bones affidavit" containing conclusory statements unsupported by any of the facts and circumstances from which a magistrate can independently determine probable cause.  *Wilhelm*, 80 F.3d at 117-18 (citing *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993)).  Therefore, the warrant affidavit presented to the Magistrate lacked probable cause.

## D. *Good Faith Exception Does not Apply*

Under the good faith exception, the fruits of a search executed under a warrant approved by a detached and neutral magistrate, even if not supported by probable cause, will not be suppressed if the officers executing the warrant proceeded in reasonable reliance upon the warrant.  *See United States v. Leon*, 468 U.S. 897, 922 (1984).  The government argues that the officers acted in good faith reliance on the warrant.  However, the good faith exception does not apply where (1) the warrant is based on an affidavit containing knowing or reckless falsity, (2) when the magistrate has simply acted as a 'rubber stamp' for the police, (3) when the affidavit is so lacking in indicia of probable cause that the magistrate has no substantial basis for determining the existence of probable cause, and (4) when the warrant is so facially deficient that an officer could not reasonably rely on it. *Id*. at 923.

In *Wilhelm*, the court found specifically that the "good-faith exception to the exclusionary rule does not apply in [a] case due to 'bare bones' nature of the affidavit, and because the magistrate

18

could not have acted as other than a 'rubber stamp' in approving such an affidavit." *Wilhelm*, 80

F.3d at 121 (citing *Laury*, 985 F.2d at 1311 n.23).   The *Wilhelm* court noted that it was following the

lead of other Court of Appeals cases which held that the *Leon* good-faith exception does not apply in

circumstances of bare bones affidavits.   *See United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir.

1993) (declining to rely on *Leon* because the warrant was based only on an anonymous tip with

scanty police corroboration and lacked probable cause); *see also United States v. Baxter*, 889 F.2d

731, 734 (6th Cir. 1989) (declining to apply the exception where the officer should have known the

informant could not be demonstrated to be reliable); *United States v. Jackson*, 818 F.2d 345, 350 n.8

(5th Cir. 1987) (stating that the good-faith exception is not available in the case of bare bones

affidavit that stated no evidence of police corroboration).

Similar to *Wilhelm*, the Court finds that it was not objectively reasonable for the officers in

this case to rely on an informant that simply told them that illegal DVDs and DVD manufacturing

equipment was being produced out of the Defendant's attic without prior corroboration.   The

government contends, however, that *Leon* applies and cites *United States v. Hyppolite*, 65 F.3d 1151,

1156 (4th Cir. 1995).   The government's reliance on *Hyppolite* is misplaced.   The key distinction

between *Hyppolite* and the present case is that, in addition to what was contained in the affidavit, the

magistrate in *Hyppolite* was presented with and considered other factors in his determination of

probable cause.   The court in *Hyppolite* explained that the magistrate also considered the defendant's

refusal to answer questions, his nervousness and aggressive behavior while he asserted his rights,

etc.   These facts, together with the affidavit, were not so lacking in indicia of probable cause as to

render reliance unreasonable.   In the instant case, there is no evidence on the record that the

magistrate was presented with any additional information other than that contained in what this

Court has determined is a "bare bones" affidavit.

One additional point bears on the Court's determination of the officers' reasonable reliance. It is uncontroverted that the entire chain of command had serious concerns that, given the facts and the information Officer Knorowski had received prior to arriving at the Defendant's residence, probable cause was lacking to conduct a search.  It was precisely this "bare bones" information which was presented to the magistrate and served as the basis for the warrant.  No other information was presented to the magistrate.  The Court is not persuaded that given the officers' own doubts of the sufficiency of the basis for the protective sweep, it was objectively reasonable for the officers to then seek a warrant based on even less information, and then to rely on that warrant.  Accordingly, the third exception to *Leon* applies-the affidavit was so facially deficient that the officers' reliance was unreasonable.  The Court also finds that the magistrate acted as a "rubber stamp" in authorizing the warrant.  *Wilhelm*, 80 F.3d 116 at 123.  Defendant's motion to suppress the items recovered pursuant to the warrant is GRANTED.

――――

**E.      *Violation of Defendant's Rights Under Miranda***

Next, Defendant asserts that all of the statements he made in the presence of officers should be suppressed because he was under custodial interrogation and the officers failed to give him *Miranda* warnings.  The government concedes that no *Miranda* warnings were issued prior to the Defendant's formal arrest.  The government argues, however, that prior to his arrest no *Miranda* warning was necessary because the Defendant was not subject to a custodial interrogation.  In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the court held that "a person subject to a custodial interrogation must first be advised of his *Miranda* rights in order for his statements to be admissible. A custodial interrogation occurs when the police initiate questioning after a person has been

deprived of his freedom of action in a significant way." *Id.*  In determining whether a suspect is in custody, a court must apply an objective standard from the perspective of a reasonable person in the suspect's situation.  *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).  The ultimate inquiry is whether, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* at 440 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  The Supreme Court has held that the detention of a suspect during the execution of a valid search warrant does not, in and of itself, constitute custody.  *Michigan v. Summers*, 452 U.S. 692, 702 (1981).

In the instant case, the Court is aware of only one meaningful and incriminating statement allegedly made by the Defendant in the presence of officers.  The statement in question was allegedly made after the officers knocked on the Defendant's door, the Defendant answered the door and the officers came into the foyer of the house.  The Defendant was asked who lived at the residence, and the Defendant responded that he owned the house.  The officers told the Defendant that they were investigating a report of illegal DVDs and asked the Defendant for consent to search the attic.  As mentioned, according to Officer Knorowski, the Defendant allegedly responded that "the DVDs are upstairs" and that he wanted Officers to get a search warrant before searching.  The Defendant testified at the hearing that he never stated that "the DVDs are upstairs."  As discussed previously, whether the Defendant made this statement has not been corroborated on the record, and given the Court's concern with Officer Knorowski's lack of credibility, the Court finds that the statement was not made.  Nonetheless, even if made, the statement would have been uttered during the initial stages of the Defendant's contact with the officers.  The facts demonstrate that the Defendant was not subject to any form of custodial interrogation at that time.  The Court cannot find

21

that Miranda warnings were required at that time.  Other aspects of the admissibility of the statement should properly be determined at trial.

Finally, though Defendant's motion to suppress includes a request that all statements made by Defendant prior to the officer's obtaining a warrant be suppressed, neither the Defendant nor the government specified what meaningful statements if any, were allegedly made by the Defendant once he was handcuffed, during the sweep and/or during the subsequent search pursuant to the warrant.  Therefore, the Court will not address the suppression of any potential additional statements.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress as to the evidence viewed during the protective sweep and the evidence seized pursuant to the search warrant is **GRANTED**.  However, Defendant's Motion to Suppress as to the statements allegedly made to the officers regarding the DVDs is **DENIED**.

The Clerk is **DIRECTED** to mail a copy of this Order to Counsel and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED**.


_____/s/_____
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
June 1, 2007